UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

NICOLE PRIEST                                                                                    PLAINTIFF

V.                                                        CIVIL ACTION NO. 3:24-CV-163-KHJ-MTP

WALMART STORES EAST, LP, et al.                                                    DEFENDANTS

ORDER

Before the Court is Defendant Walmart Stores East, LP's [43] Motion for Summary Judgment. The Court grants it in part and denies it in part.[1]

I.   Background

This case arises from Walmart's decision to fire Plaintiff Nicole Priest. And this motion presents essentially one disputed question: Could a reasonable jury find that Walmart fired Priest because she took leave under the Family and Medical Leave Act (FMLA)?

To answer that fact-intensive question, the Court begins with some context. Priest started her 18-year career with Walmart in 2004. Priest Dep. [43-7] at 6; *see also* Compl. [1-1] ¶¶ 5–13. In 2017, she transferred to a store in Yazoo City, Mississippi. [43-7] at 6–7. There, Priest came in as a Customer Service Associate. *Id.* at 7. She was quickly promoted to Customer Service Manager. *See id.* And in January 2021, she became a Digital Personal Shopper. *Id.* at 8. In that role, Priest

---

[1] The Court finds as moot Walmart's [56] Motion to Strike. The Court did not rely on the [46-20] Statement of Kenya Calvin in deciding Walmart's [43] Motion for Summary Judgment.

reported to Latashia Thomas (Team Lead), who was under Rittany Anderson (Front End Coach), who was under Ramondo James (Store Manager). Thomas Dep. [46-3] at 2–3; Anderson Dep. [46-4] at 2–3. Rounding out the cast of managers, Michael McDonald (People Lead) headed up human resources. [46-4] at 2–3.

Against that backdrop, the Court turns to the events at issue. From August to mid-November 2021, Priest took FMLA leave to care for her minor daughter, who has congestive heart failure. Leave Approval [46-7]; [1-1] ¶ 8. Priest then returned to work from mid-November to December 29, 2021. *See* [43-7] at 23–24; [46-7]. That day, she reported that her daughter had COVID-19, so Walmart sent her home for a mandatory two-week quarantine. *See, e.g.*, [43-7] at 23–24; Priest Dep. [46-10] at 2–3; *see also* COVID-19 Emergency Leave Policy [43-5] at 5.

After some scheduling difficulties, Priest returned to work in mid-February 2022. *See, e.g.*, [43-7] at 28, 32, 36–37. And according to Priest, she returned to quite different working conditions. To begin, supervisors repeatedly commented on her leave:

- McDonald allegedly told Priest that she "shouldn't be taking a leave," that she "wouldn't be in the same position," and that "[t]here was no guarantee that [she] would still have a job." [46-10] at 6–7.
- Thomas allegedly told Priest's colleagues not to take leave, making an example out of Priest. *See* [43-7] at 48 ("[S]he used to say things about me taking a leave and insinuating to the other people telling them, don't take a leave. And then she'd be like, right, Nicole? You took a leave for your daughter?"); *see also id.* ("Q. When did [Thomas] make comments about a leave of absence?" "A. A lot of times.").

What's more, McDonald and Thomas asked whether Priest wanted to be a cashier. [46-10] at 5. Priest said no. *Id.* But McDonald still changed her job code without her

2

knowledge before changing it back. Walmart Mem. Supp. Mot. [44] at 12–13; *see also, e.g.*, [46-3] at 12–13 (Thomas saying that McDonald "prematurely" changed Priest's job code); June Email [43-8] (Priest stating that her "password was . . . reset to confirm the change"). And someone at Walmart filled out a Docusign agreement (complete with Priest's Social Security number) falsely representing that Priest "[a]ccepted" the demotion and $2 hourly pay cut. *See* Job Offer Form [52-5] at 1–2.[2]

Priest eventually caught the job-code change and reported it to Thomas, Anderson, James, and McDonald. [43-7] at 41. Thomas, Anderson, and James allegedly balked, saying that Priest should address the issue with McDonald. *See id.* For his part, McDonald allegedly said that "he'[d] get to it . . . ." *Id.* at 42.

"He never got to it . . . ." *Id.* So in June 2022, Priest reported the issue to Walmart's Global Ethics team. [43-8]; *see also* Global Discrimination & Harassment Prevention Policy [43-1] at 2–3 (discussing reporting procedures). A Walmart investigator contacted the Yazoo City store, directing it to reimburse Priest for the pay-rate error. *See* [43-7] at 50; [52-5] at 1. Anderson did so, but she allegedly chided Priest for getting "ethics involved and [making] it a hostile work environment." [43-7] at 52.

That brings the Court to July 2022, when Walmart's attendance policy came into play. The Court pauses to sketch out that policy. In short, Walmart employees generally get one attendance point for missing a shift. *See* Attendance & Punctuality Policy [43-3] at 2–4. And they generally get half a point for arriving

---

[2] Because McDonald changed her job code, Priest infers that he also filled out the Docusign agreement. *See* [47] at 4, 15.

3

more than ten minutes late or leaving more than ten minutes early. *See id.* But they do not get any points if, as relevant here, they have enough protected PTO to cover the missed time. *See id.* at 2–3; Paid Time Off Policy [43-6] at 3 ("Protected PTO provides absence protection."). An employee who accrues five points within a six-month period is "subject to termination." [43-3] at 3; *see also* [46-4] at 8–9 (Anderson noting that, under that language, termination remains discretionary).

With that policy sketched out, the Court picks back up on July 18, 2022. When Priest started her shift that day, she had 4.5 attendance points. *See, e.g.*, July Emails [43-11] at 2. She was slated to work until 7:00 p.m. [43-7] at 38. Priest says that she punched out at 6:18 p.m. and used 45 minutes of protected PTO to cover the early departure. ALJ Decision [43-12] at 1; [46-10] at 4; Protected PTO Tracking [46-18]; *see also* GPS Tracking [46-17] (showing that Priest started driving away from Walmart at 6:18 p.m.). But Priest says that McDonald changed her punch-out time to 6:02 p.m., which gave her an unauthorized early departure—and brought Priest's point total up to five. [46-10] at 4; [43-11] at 1–2; Priest Dep. [55-4] at 4.[3]

The next day, Anderson sent some texts about Priest's (and another employee's) attendance points:

> Nicole [Priest] and Shaday [Lee] on the termination list . . . . I don't return to Fri so if your going to keep them you need to fix there points or terminate. Both our a problem for your business . . . . The kids can't keep being excuses and Nicole can't keep doing what she won't.

---

[3] Priest argues that this was not the first time that happened; McDonald allegedly "repeatedly tampered with Priest's attendance records" after she returned from leave. Priest Mem. Supp. Resp. [47] at 16–17.

Anderson Texts [46-19] at 1–2. Anderson meant to send those texts to Thomas but accidentally sent them to Lee instead. [46-4] at 4.

About a week later, Anderson fired Priest, allegedly because she "pointed out at 5.0." *See* Termination Log [46-21] at 1; [46-3] at 8 (Thomas saying that she and Anderson met with Priest, but Thomas "did not speak at all"). During the meeting, Priest allegedly asked about "[McDonald's] reason for adjusting [her] time," but Anderson allegedly "had no answer . . . [except] that [Priest] had 5 points and needed to be terminated." [43-11] at 2; *see also* [43-7] at 55. Walmart did not fire Lee, even though Lee was also a Digital Personal Shopper, had the same direct supervisor and chain of command, and had accrued five attendance points during the same six-month period. *See, e.g.*, [46-10] at 8; [46-3] at 10; Walmart Resps. to Reqs. for Admiss. [46-23] at 2–3.

After her termination, Priest successfully claimed unemployment benefits from the Mississippi Department of Employment Security. [43-12]. The administrative law judge (ALJ) noted that Walmart "was unable to specify the number of points assigned or the dates of the offenses charged against [Priest], although extended time was provided to [Walmart's] witness to locate" that information. *Id.* at 1. The ALJ thus concluded that Walmart did not prove by "substantial, clear[,] and convincing evidence . . . that [Priest] engaged in misconduct . . . ." *Id.* at 2.

Priest then filed a state-court lawsuit, which Walmart removed to this Court. [1-1]; Notice of Removal [1]. Priest raised two claims: (1) FMLA retaliation and (2) breach of contract. [1-1] ¶¶ 18–29.

After discovery closed, Walmart moved for summary judgment on both claims. [43]. As for the FMLA-retaliation claim, Walmart submitted that there is "simply no evidence" that Priest's FMLA leave caused her termination. [44] at 24. And as for the breach-of-contract claim, Walmart argued that Priest was an at-will employee. *Id.* at 24–26. In response, Priest argued that her circumstantial evidence "firmly supports a reasonable inference of [FMLA] retaliation." [47] at 2. But her response did not address Walmart's breach-of-contract argument. *See id.* at 1–27.

II.   Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, while a dispute about that fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (cleaned up). And a movant is "entitled to a judgment as a matter of law when the nonmoving party has failed to make a sufficient showing on an essential element of [her] case with respect to which [she] has the burden of proof." *Carnegie Techs., L.L.C. v. Triller, Inc.*, 39 F.4th 288, 293 (5th Cir. 2022) (cleaned up).

The Court "must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in [her] favor." *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). The Court "may not evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (cleaned up). "The sole question is whether a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor." *Id.* (cleaned up).

III.  Analysis

The Court first denies summary judgment on Priest's FMLA-retaliation claim. It then grants summary judgment on her breach-of-contract claim.

A. FMLA Retaliation

"The FMLA creates a cause of action for retaliatory discharge." *Lindsey v. Bio-Med. Applications of La., L.L.C.*, 9 F.4th 317, 324 (5th Cir. 2021). Courts analyze FMLA-retaliation claims under the three-step *McDonnell Douglas* framework. *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 582 (5th Cir. 2021). Under that framework's first step, Priest must make a prima facie showing of a "causal link" between her FMLA leave and her termination. *Lindsey*, 9 F.4th at 324 (cleaned up).[4] Under the second step, the burden shifts to Walmart to articulate a legitimate, nonretaliatory reason for terminating Priest. *Houston*, 17 F.4th at 582.

---

[4] The parties agree that Priest engaged in protected activity (FMLA leave) and then suffered an adverse employment decision (termination). *See* [44] at 17; [47] at 11; *see also id.* at 11 n.69 ("Although Priest alleges other hostile treatment by Walmart, including a reduction in pay and tampering with her attendance records, she does not contend these acts constitute distinct adverse employment actions.").

And under the third step, the burden shifts back to Priest to "show by a preponderance of the evidence that [Walmart's] reason is a pretext for retaliation." *Id.* (cleaned up).

The Court now walks through each step, explaining why Priest's FMLA-retaliation claim survives summary judgment.

1. Prima Facie Case

Priest has made a prima facie showing of causation.

Evaluating causation entails a "highly fact[-]specific inquiry" into the summary-judgment record. *Decou-Snowton v. Jefferson Par.*, No. 24-30079, 2024 WL 4879466, at *6 (5th Cir. Nov. 25, 2024) (per curiam) (unpublished) (cleaned up). "To establish a prima facie case, a plaintiff need only make a very minimal showing." *Houston*, 17 F.4th at 582 (cleaned up). That is, a plaintiff must present enough evidence to "conclude that the protected activity and the adverse employment action are not completely unrelated . . . ." *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 766 (5th Cir. 2016) (cleaned up). She "does not have to show that the protected activity is the only cause of her termination." *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 305 (5th Cir. 2021) (cleaned up).

Priest's evidence is amply sufficient.

For starters, Priest offers evidence that McDonald (1) was "motivated by retaliatory animus" and (2) "took acts intended to cause an adverse employment action." *Perkins v. Child Care Assocs.*, 751 F. App'x 469, 475 (5th Cir. 2018) (per curiam) (cleaned up). Indeed, Priest offers evidence that McDonald (1) made

8

repeated negative comments about Priest's FMLA leave and demoted her without her knowledge upon her return and then (2) tampered with Priest's attendance records so that she would accrue five attendance points. *Supra* pp. 2–4.[5]

Priest also offers evidence that Anderson and Thomas (1) made comments showing retaliatory animus and (2) were "primarily responsible" for the firing or had "influence or leverage" over the person who was. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475–76 (5th Cir. 2015) (cleaned up). Priest offers evidence that Anderson (1) said "[t]he kids can't keep being excuses" and then (2) fired Priest about a week later. *Supra* pp. 4–5.[6] And Priest offers evidence that Thomas (1) made negative comments about Priest's FMLA leave and then (2) had influence over the decision to "fix [Priest's] points or terminate." *Supra* pp. 2, 4–5.[7]

---

[5] Walmart's [55] Reply repeatedly charges that Priest "mischaracterizes" and "misrepresents" the record. [55] at 2–6. First, Walmart says that there is "no evidence" that McDonald created the document that demoted Priest and cut her pay. *Id.* at 2. But a jury could reasonably infer that he did based on the evidence in the summary-judgment record. *See, e.g.*, [44] at 12 (Walmart conceding that "McDonald still changed her job code to Cashier without [her] knowledge"). Second, Walmart criticizes Priest's "desperate attempt" to "mischaracteriz[e]" her own testimony about McDonald's negative comments. [55] at 5. But Priest's testimony was that McDonald said that he "had an issue with [Priest] taking an FMLA leave of absence," that Priest did not "need to take a leave," that Priest "shouldn't be taking a leave," that Priest "was not going to be in the same position anymore," and that "[t]here was no guarantee that [Priest] would still have a job." [46-10] at 6–7. A jury crediting all that evidence could reasonably infer retaliatory animus. *See Perkins*, 751 F. App'x at 475. And third, Walmart argues that Priest's evidence "does not show . . . McDonald changing [Priest's] punch out time on July 18, 2022 . . . ." [55] at 3. But Priest offered evidence that she "punched out at 6:18," [46-10] at 4, and that McDonald then "[m]odified" her attendance record. [46-13] at 5; *see also, e.g.*, [43-11] at 1–2; [43-12] at 1; [46-17]; [55-4] at 3–4. Based on all the evidence in the summary-judgment record, a jury could reasonably infer that McDonald changed her time.

[6] Walmart disputes whether the "excuses" text was referring to Priest's FMLA leave. [55] at 3–4. But a jury could reasonably infer that it was: "It is undisputed that Priest's FMLA leave was taken for the express reason of caring for her daughter." [47] at 17.

[7] Walmart's [55] Reply fails to address Priest's testimony about Thomas's alleged comments. *See* [55] at 4–5 (addressing only Calvin's statement); *see also* [43-7] at 48. And it

Finally, Priest offers evidence that Walmart treated her "more harshly than [a] similarly situated employee[] for nearly identical conduct." *Lorentz v. Alcon Lab'ys, Inc.*, 535 F. App'x 319, 326 (5th Cir. 2013) (per curiam) (cleaned up). Her evidence shows that Walmart did not fire another Digital Personal Shopper who had the same job duties, had the same supervisors, and had accrued the same number of attendance points in the same six-month period. *Supra* pp. 4–5.[8]

Given all that causation evidence, Priest has made the necessary "very minimal" showing. *Houston*, 17 F.4th at 582 (cleaned up). So the burden shifts to Walmart to articulate a legitimate, nonretaliatory reason. *See id.*

2. Legitimate, Nonretaliatory Reason

"Walmart articulated a legitimate, nonretaliatory reason for the termination: violating the company's Attendance and Punctuality policy." [44] at 22. So the burden shifts back to Priest to "show by a preponderance of the evidence that

---

does not dispute that Thomas had influence over the termination decision. *See* [55] at 4–5 (disputing only Thomas's "discriminatory animus").

[8] Walmart submits that Priest and Lee do not have "identical" attendance-violation histories. [55] at 1–2. But the Fifth Circuit does not require that employees' attendance histories be "totally identical." *Lee v. Kan. City S. Ry.*, 574 F.3d 253, 260–61 (5th Cir. 2009) (explaining that employees' track records must be comparable, but they "need not comprise the identical number of identical infractions"). In any event, the Court has no information about Lee's attendance history before the six-month period at issue, and it is unaware how many times Priest was previously on the five-point list. *See* Lee Attendance Sheet [55-1] (listing only absences between November 2021 and July 2022); Anderson Dep. [55-3] at 3 (saying only that it was not Priest's "first time" on the five-point list). And even if Walmart were right that Priest and Lee were not "nearly identical," "disparate treatment of less similarly situated comparators" may still serve as "some evidence of pretext, even though it is less probative than evidence of a more similarly situated comparator." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 580 (5th Cir. 2020) (cleaned up).

10

[Walmart's] reason is a pretext for retaliation." *Houston*, 17 F.4th at 582 (cleaned up).

3. Pretext for Retaliation

Priest has "produced enough evidence for a factfinder to conclude that [Walmart's] attendance-based justification was pretextual." *Lindsey*, 9 F.4th at 325.

"An employee can show pretext using *any* evidence that casts doubt on the credence of the employer's reason," and "evidence need not be dispositive of pretext to be probative in determining pretext." *Way v. City of Missouri City*, No. 24-20144, 2025 WL 1064850, at *11 (5th Cir. Apr. 9, 2025) (cleaned up). "[A] fact dispute exists so long as [Priest's] evidence is of such quality and weight that reasonable and fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions." *Lindsey*, 9 F.4th at 325–26 (cleaned up). "At summary judgment, evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of [retaliation] even without further evidence of defendant's true motive." *Rodriguez*, 820 F.3d at 765 (cleaned up); *see also EEOC v. LHC Grp.*, 773 F.3d 688, 694 (5th Cir. 2014) ("[A] prima facie case . . . plus a showing that the proffered reason is pretextual is typically enough to survive summary judgment.").

Priest's evidence that Walmart's attendance-based justification is false, coupled with her prima facie causation evidence discussed above, creates a jury question on pretext. *See Rodriguez*, 820 F.3d at 765; *LHC Grp.*, 773 F.3d at 694; *supra* pp. 4–5 (Priest's evidence that the attendance-based justification is false);

11

*supra* pp. 8–10 (Priest's prima facie showing that supervisors made negative comments about her FMLA leave; McDonald changed her job code; McDonald tampered with her attendance records; and Walmart did not fire another Digital Personal Shopper who had accrued five attendance points).[9] A reasonable jury crediting Priest's evidence, and drawing all reasonable inferences in her favor, could find for Priest. *Guzman*, 18 F.4th at 160. So the Court denies summary judgment on the FMLA-retaliation claim.

B. Breach of Contract

The Court grants summary judgment on Priest's breach-of-contract claim. Priest did not address that claim in her response, [47] at 1–27, and the "failure to pursue this claim beyond her complaint constitute[s] abandonment." *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006).

IV. Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the stated reasons, the Court GRANTS IN PART and DENIES IN PART Walmart's [43] Motion for Summary Judgment. The Court also FINDS AS MOOT Walmart's [56] Motion to Strike.

SO ORDERED, this 14th day of April, 2025.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE

---

[9] Given Priest's evidence that the attendance-based justification is false, the Court need not decide whether the ALJ's decision is entitled to issue-preclusive effect. *Compare* [47] at 20–23, *with* [55] at 6–8. And because Priest survives summary judgment on a but-for causation standard, the Court need not decide whether a motivating-factor framework is available. *See, e.g.*, *Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 710 (5th Cir. 2016); *Way*, 2025 WL 1064850, at *11 n.26.